May it please the court, I'm Michael McConnell representing the plaintiffs and appellants in this case. The old San Carlos sign ordinance under which this case occurs absolutely prohibits the display of any political messages on a permanent sign, such as a poll sign, no matter what their size, no matter what their height. Now my client, Mr. Herson, on September 2, 2009, filed an application to build a poll sign for the display of political messages. That application was denied on the spot for one and only one reason, which was blatantly content-based, and we submit obviously unconstitutional. The question before this court today is whether he has standing to challenge that denial of his permit. Now, the only reason this is even, I think, remotely possibly at issue is that some four months, more than four months after he filed the federal lawsuit in district court, the city came forward with a second alternative justification for denying the permit. Now, they contend that because they have an alternative justification, somehow that divests the federal court of jurisdiction to decide this case. Now, that can't possibly be right for a number of, I think, rather clear reasons. Most fundamentally, Article III standing is judged according to the time of the filing of the complaint. Subsequent events, like a change of litigation strategy on the part of the defendant, can't possibly take away standing if standing occurred at the beginning. And there was no doubt at the beginning of this lawsuit that my client had standing. In fact, he got a TRO in recognition of his claims. But I think even more fundamentally than that, if he had been given the proper reason, what the city now claims is its proper reason, at the time, as he was constitutionally entitled to, because recall that under prior restraint doctrine, an applicant is entitled to a prompt decision with a statement of reasons. And I assume that the statement of reasons must mean their real reason, that a city cannot simply give a placeholder reason that's unconstitutional and then wait four months into litigation and supply some other reason. If he had been given the proper reason on the day when he had applied, a reason that they now say is based upon height and size requirements, he would have been able to modify his application and conform to those requirements. But let me just step back. The reason that was given on September 4th is that this was an illegal billboard. Is that correct? That's correct. Okay. And billboards are defined as signs that do not advertise goods and services on the property. So the definition of billboard is content-based. And please note it excludes any political signs. So all political signs are necessarily, by definition, billboards and therefore prohibited under this statute. But as I read this, you didn't challenge the billboard ordinance per se. I mean, that's not what's challenged in here. We challenged the denial of the permit. Right. But you didn't. But the whole MMA, this is where the district court went off, of course, on the height and the whole sign requirement. But if you look at the billboard requirement, which that's what they say he violated, that's not really what was challenged. Oh, on the contrary, Judge McCown, that's exactly what was challenged. McEwen. McEwen, excuse me. But where do you On the ground that it discriminates between commercial and noncommercial speech. That it allows some types of commercial speech and forbids all noncommercial speech, including political speech. And that is precisely why Judge Patel granted the temporary restraining order on precisely that theory. If you read the billboard, billboards are precluded absolutely under the ordinance, correct? That's right. Okay. And your view that you, that by definition that that carves out content related to political speech is based on what? It's that a billboard is any sign, excuse me, I'm trying to find it here in this confusing ordinance, but a billboard is any sign that does not advertise goods and services on location. And in the written notice, when the clerk in the sign planning office wrote on his application the reason, the precise language was billboard signs not advertising goods and services on property. And so that by definition excludes political speech, noncommercial speech. It also excludes some forms of noncommercial speech. But that isn't the issue here because my client was specifically building, proposed to be building a sign for political speech. The, and had he been given what the city now says is his real reason, that is heightened signage, not only could he have modified his application and thus negotiated an acceptable application, but more importantly, and this really goes to the heart of this case, it would have become evident that there is no height and no sign specification that would be permitted that if satisfied would have allowed him to build a sign for the display of political messages because they are simply categorically forbidden for any signs of any size of any height. So had he been given the proper reason at the time, it would have become evident that the true reason, the only reason why he was denied his permit was this content-based discrimination against noncommercial political speech, which is categorical and runs through the entire ordinance. That's what's unconstitutional here. And I do not see how it could possibly be said that he lacks standing to raise that argument. It is certainly redressable. He's entitled to damages. He's entitled to attorney's fees. He may very well be entitled to other forms of relief. And the fact that the site, that the city has now cited inapplicable height and size restrictions is simply a red herring. I say they're inapplicable, again, because there is no size and no height that would have resulted in approving his permit application under this ordinance. Now, the district court and now the city rely very heavily on get-outdoors-to, which is distinguishable for reasons that I think go quite to the heart of this matter. In get-outdoors-to, the height and size regulations that were applied to the permit applicant actually applied to the very kind of sign that was being applied for. So in that case, had he complied with those height and size requirements, he would have been entitled to the permit. Here, again, entirely different, because the height and size requirements are an irrelevancy. A permanent sign for the purpose of the display of political messages would have been verboten under the ordinance no matter what. There's a second reason as well, which is that in get-outdoors-to, the height and size requirements were genuinely content neutral. They applied across the board to all signs. In this case, if you sort through this convoluted statute that the district court, I think, correctly said is nearly unintelligible, but if you spend a little bit of time with it, you'll see that the height and size requirements do not apply across the board. There are different height and size requirements for different kinds of signs defined frequently on the basis of content, and that there's some kinds of signs defined on content that have no height and size requirements whatsoever. And what's more, on top of all of this, there's a provision for variances from these height and size requirements that are based upon a completely standardless provision of the health, welfare, safety of the public, which is as court held in the desert-outdoors case is not a sufficiently specific specification to pass constitutional muster in a prior restraint case. Would you address what I'm sure is an argument that we can anticipate based on the briefing, and that is with the change of the ordinance that the case is moot. It certainly would seem to me to be moot as to declaratory and injunctive relief, but what about damages?  During that period of time when he was entitled to have a sign and before the enactment of the new statute, he's entitled to damages, certainly nominal damages, and he's asked for $15,000 a month per face on the signs. Beyond that, this is really not the occasion to talk about appropriate relief, but it is quite possible, and we will be arguing on remand, that he's entitled to considerably more, because if it was unconstitutional to deny him the permit at the time it was applied for, then appropriate relief should be the grant of the permit nunt pro tunc, and then he may very well be entitled to keep that permit under the grandfather clause of the new ordinance. That, however, has not been briefed, and we don't know exactly what the appropriate relief would be, but nominal damages is certainly enough. I think we have your argument in hand. Why don't you save some time for rebuttal? Thank you. From the city. Good afternoon, Your Honors. Randall Morrison for the City of San Carlos. With me at the desk is Mr. Rosenbaum, my co-counsel. City Attorney Rubens is in the audience. I'd also like to acknowledge the work that Mr. Brinton from Jacksonville, Florida, did on the amicus brief. This is really a very simple case. I'd like to focus on what's really going on here. It's a case about a permanent structure. It's not about messages. It's not about live protesters or picketers on the street. It's not about parades. It's not about annual permits for news racks. It's not about temporary signs, whether they're displaying political messages or any other type. It's not about on-site signs or directional signs. Specifically, it is about a 50-foot high solid steel structure that would block the public view for the better part of a century and turn a publicly funded highway into an advertising theater. The key line in the complaint is this. Plaintiffs intend to earn income by leasing space on the sign to others. That tells us it is a billboard, no matter what label is applied on the application. It is a billboard. The purpose of it is to rent space to other advertisers. The appellants have never denied that their application was, in fact, for a billboard. And despite all the posturing about political speech, the case is really about dreams of cash flow, $30,000 a month for the better part of a century. All of the posturing and puffery about political speech is a complete masquerade. It's a clever contrivance to manufacture standing in an attempt to defeat the city's 85-year-old ban on billboards and get around the Supreme Court decision in Metro Media, which says by seven votes that if a city wants to ban billboards, it can. Also trying to get around this Court's holding in Ackerley of the Northwest v. Crocalis, which says in addressing Seattle's rule, it says no new billboards. Seattle can ban the construction of new billboards without detailed proof that the billboard regulation will, in fact, advance the city's interests, end of quote. There is no expressive conduct in the installation of a billboard structure. The expression happens only after the structure is in place and then some message is put on the display face. As to billboards, San Carlos regulates structures by banning them. For existing legal billboards, the city has never had any kind of system for advanced licensing of particular messages. The controlling case for this case is clearly Get Outdoors v. San Diego. Decided by this Court about three years ago. It's relegated to a footnote in the appellant's opening brief. It's on all fours. There are no meaningful distinctions between that case and this one. The size and height factors for the signs in issue there are exactly the same as here. The reason for the permit denial was exactly the same. This is for a billboard. We ban billboards. The time for decision issue is exactly the same. In San Diego, it was rejected the next day. Here, it was rejected upon presentation. The reason was given in writing with a specific citation to the exact point in the city's code that said that. Mr. McConnell says the way he reads the billboard, prohibition relates to commercial, therefore making a distinction with political. And I guess he's pointing to the language of product activity or service. What is your response to that? This is a complete canard. The city never plays any role whatever in prior licensing of what kind of messages goes on billboards. None. I would direct the Court specifically to the National Outdoor v. City of Orange case. There's a lot of discussion there about discrimination between various kinds of nonpolitical or noncommercial speech and so on. But the last paragraph of the case is the one that really matters. The city took a second swipe at the application and on its second round denied it for size and height rules. The sign company said, well, you're in contempt because you didn't grant the permit. This Court said no. After the district court's initial ruling, the city again reviewed Nationals' applications and this time rejected them because the structure and design of the proposed billboards exceeded maximum size and height limitations and violated other restrictions unrelated to the invalid sections of the sign ordinance as the city was allowed to do. You find the very same thing in Valley Outdoor v. County of Riverside. Yes, there were some flaws in the drafting of the sign ordinance. That's right. But there was undisputed violation of size and height rules. That's enough to decide the entire case. No damages are available. I'd like to continue with the similarities between Get Outdoors v. San Diego in this case. The revisions to the sign ordinance included message substitution, a specific time limit on decisions. Later in the litigation, San Diego City showed that the application was incomplete. We have that factor here, too. And the violations of the size and height rules, regardless of message type, decided the case. Summary judgment was granted to the city, both in San Diego and in this case. And they are very similar in the reasoning. No standing to challenge irrelevant provisions. The billboard ban is constitutional and the size and height rules function independently. They are content neutral, time, place and manner valid. Let's look at the constitutional requirements for standing, actual injury and fact. Is that satisfied here? Yes, it is. Permit denial is actual injury and fact. Is there a causal connection between the injury and the conduct? I think no. It is debatable. Is there redressability? No, there's not. It doesn't matter. They want a billboard, a permanent sign on the freeway that's going to be there for the better part of a century pumping out cash. The city says no billboards, no new billboards in this town. That's been our rule since 1926. All three constitutional elements must be satisfied separately as to each claim. That's the key line in the San Diego case. The company has standing to challenge only those provisions which actually applied to it and cannot leverage its injuries under some other provisions to state an injury to challenge the sign ordinance generally. In other words, it's a rejection of the roving commission theory, which we see in full play in this case. I would also refer the Court to Prime Media v. Brentwood, Sixth Circuit, discussing size and height rules. The fact that if there's a clear size and height rule violation, the case is over. You know, the difficulty you have with this particular statute, at least the prior statute, is that you have a variety of exceptions. It's not just a flat billboard ban. And therefore, there's a content-based argument based on the exceptions and ---- I think there's an excellent decision from this Court about that. It is Ballin v. Redmond, Washington. We have a guy on the sidewalk walking up and down and inviting people to come in and buy a bagel. Citi decided he was within the definition of portable sign. And they banned them, and then they had a bunch of exceptions to the general ban. And the exceptions applied specifically to the portable sign. And because of that, it was unconstitutional. But there's a line in the case that says, if the ban applied universally without these content-based exceptions, it would be valid. There are no exceptions to the Citi's rule about billboards. Never were. It's a flat-out ban. None of the exceptions apply to the billboard-type structure. That's the distinction. It's crucial in this case. Now, the opening brief also talks about prior restraint. No need to explain why billboards are banned. We know from Metro Media that that's within the Citi's power. The Citi did not take Mr. Herson's bait about political speech and denied the permit application on the basis of the billboard ban. The complaint does not even allege that the Citi ever used some advance approval process for specific messages on billboards. And, in fact, it never did so. There's evidence in the record saying that the whole idea of message substitution has been an administrative practice for years anyway. The prior restraint cases involve licenses for live, in-person picketing, cases like Shuttlesworth, Grain Ed, Peace Network, Thomas v. Chicago Park, and sometimes very specific messages, such as censoring movies or books. What's a billboard under the ordinance? A billboard under the original ordinance was defined as one which displays messages for products and services not sold on the property. Under the revised version of the signed ordinance, it says a billboard is a permanent structure in a fixed location which meets any one of these criteria. Number one, it's used for the display of office. Right. It's just the revised ordinance. That's right. But that's what the ordinance we're looking at. Well, in terms of mootness, we are looking at the new one. Yes. As far as what was challenged and the denial was based on the old ordinance, which is the basically the sign directing attention to any product activity, et cetera. Right. So it doesn't talk about. I mean, we have in our head what a billboard is, of course. Right. But I'm just looking at that definition, which basically says it's a sign which draws attention to product activity or service upon which that sign is located or to which it is affixed. So it's an on-premises. It's off-premises. Yes, that's correct. That's right. And that's the only definition that was in the old ordinance. I think that's correct. I also think we need to pierce the sham here. If their true intent was to display political messages, they could have gone to their friends and used message substitution, somebody else's sign display area for their message. They could have gone to the owners of some of the legal billboards in the town and said, let us put our message on your billboard. And I know from dealing with these people all the time, they frequently will donate the time for political and religious speech. That's largely irrelevant to our consideration. The question is, have they alleged standing into the old ordinance? And obviously they're seeking damages, so it's not moot at that point. And I realize you have a longstanding political dispute with them. If we look at Valley Outdoor v. County of Riverside, very clear. Size and height violation, no damages are available. I believe the same holding is also in the San Diego case, yes. Well, it's kind of we're sort of going down two paths here. One is, well, do they really challenge billboards per se, which in general a billboard ban has been held to be constitutional by the court. Are they really challenging that, because that's what you said they didn't have? Then we come back to the size and height restrictions, which is not part of the billboard ban, correct? That's part of the pole sign ban. That's right. Or the pole sign requirements. Right. So if you go down the pole sign requirements, and we have cases that say we don't get damages just on the size and height restrictions. Right. Is that true on a billboard? I don't see why there's any principal difference. You want to put up an illegal structure, we say no. How come you're entitled to damages? All of the stuff about political messages is complete posturing. What they're really trying to do is go into the billboard business, and they're using the court's sympathy, the court's natural instinct to protect noncommercial speech, to try to play a joker card and go far, far beyond any kind of political messages. That's a very temporary thing, a short-term kind of thing. It's a trick. And where exactly is that in the record? It's in the record because they plead, number one, we were denied our political speech rights. And then in the line that I quoted, we intend to make money leasing the space to outsiders. It is simply unrealistic to think you can make $15,000 per month per face for decade after decade with only noncommercial speech. That is not the market. I don't know. All bets are off on political speech these days in terms of how much you can pay for it, so maybe it's not unrealistic. It is completely unrealistic that they could generate that kind of money over long periods of time on just noncommercial speech. But we can't really – that can't be a basis for our decision, though. No, but all of the analysis of the Head Outdoors v. San Diego case can be. All right. There's material in the opening brief about we had to explain to them the reason for denial. We did. On presentation. Specific language, citation to the code. Limit on decision time. That's also in the complaint. They have no standing there because they have no injury when the decision is made immediately upon presentation. Mr. – young Mr. Herson came in, filled out the form, put in the debate about its political speech, and was told right away, you can't do this. I would also point out that severance is a preferred way to resolve some of these billboard cases, and the leading one on that point is Valley Outdoor v. County Riverside, which is essentially the same facts and the same law as Desert Outdoor v. Marino Valley, but it has the opposite result, because in Valley Outdoor, the court was willing to sever out the size and height rules and say that's all we need, and it's the same lesson that applies here. Your time has expired. Are there further questions? Thank you. I'd appreciate the opportunity for rebuttal. No, we don't. As an appellee, you don't get rebuttal. Okay. Thank you. Just three quick points. The complaint in this case was that my client was going to display political messages on the billboard. There's been no fact finding. To the contrary, Mr. Morrison may think it's unrealistic that one can make money selling billboard space for political messages. I think that's my client's financial decision to make, not his. But this is a case about political speech, and it doesn't cease to be political speech just because it's being done for a profit. If it were, New York Times v. Sullivan would have been decided the other way. Second point. Mr. Morrison says that billboard bans have been upheld, and so they have. But in those cases, billboard was defined in the usual English fashion, meaning a sign of certain dimensions. In San Carlos, that isn't what billboard means. In San Carlos, billboard is defined according to the nature of the messages that are displayed on it. That is their ordinance. Their ordinance blatantly discriminates between commercial and noncommercial speech, disallowing making all permanent signs for the display of political messages illegal. That has certainly not been upheld by this Court, by the Supreme Court, by any court. It is flatly unconstitutional under Metromedia. Help me out on that one. They say basically all billboards are off. And it doesn't matter whether it's political, commercial, you know, recreational, whatever. It doesn't matter. But the definition of billboard, Mr. Morrison said it himself. Now, the new ordinance may define billboard in the ordinary content-neutral fashion, but the old ordinance just flatly defines billboards as signs that are advertising something other than goods and services on-premises. So they are off-premises signs, and all political signs are by definition billboards. So this is just a blatantly content-based discrimination between commercial and noncommercial speech. All you have to do is look at the definition in the ordinance. What if it's an on-premises versus off-premises? Well, that is a kind of question. That isn't content-based. Well, actually, Your Honor, I think that is content-based. But in this case, the significant point is that there is discrimination against noncommercial political speech because that has been defined completely out of this ordinance. So there can be no permanent signs for the display of noncommercial political messages. So are you saying Go Outdoors 2 was wrongly decided? Oh, no. No, in Get Outdoors 2, the scheme is quite different. There, the size and height requirements actually applied to the very type of sign that the applicant was going to do. He was going to do commercial signs, and the size and height requirements applied to him. So if he had complied with those, he would have gotten a permit. That's why his failure to comply with them ended the case. Here, it doesn't matter how or what the size or the height are of my client's signs. They are verboten on the basis of their content, no matter what their size and height may be, which is actually my third point, which is that the size and height is true that size and height requirements under some circumstances are content-neutral. But here they are not content-neutral for two reasons. One is that they're riddled with exceptions, that they apply to some types of signs, not to other signs, with a variance proceeding which is completely standardless. So they are not content-neutral in the way in which they were in Get Outdoors 2. But I think even more importantly than that, they simply don't apply to signs for the display of political messages. If you want to display political messages on a permanent sign, you are just out of luck in San Carlos. They have made all of those signs illegal. And that is simply unconstitutional. Thank you, counsel. Thank you. The case will be submitted for decision. And we'll be in recess for the afternoon. All rise.
judges: Thomas, McKeown, Murguia